**ARMCO STEEL CORPORATION,**
Appellant,

v.

**ADAMS COUNTY, NORTH DAKOTA**
et al., Appellees.

**No. 18153.**

United States Court of Appeals
Eighth Circuit.

April 11, 1967.

JOHNSEN, Senior Circuit Judge.

This appeal is from the treble-damage judgments rendered in favor of six Counties of the State of North Dakota in an action brought by them under 15 U.S.C.A. § 15, (with joinder as plaintiffs being engaged in under the provisions of Rule 20(a) Fed.Rules Civ.Proc., 28 U.S.C.A.) to recover for the injuries sustained by each of them from violation by Armco Steel Corporation[1] of the provisions of Section 1 of the Sherman Anti-Trust Act, 15 U.S.C.A. § 1.

The amounts of the treble damages awarded were as follows: Adams County $6,327; Dunn County $17,319; Emmons County $21,846; Grand Forks County $28,089; Logan County $3,552; Morton County $11,316.

The violation alleged and found by the jury to have existed was a conspiracy on the part of Armco and three North Dakota fabricators and suppliers to fix uniform prices on corrugated culverts, and the recovery basis relied on was the effect of these artificial prices upon the cost to the Counties in their purchases of such culverts for local road-work purposes during the years 1957–1960.

The conspiracy and Armco's criminal conviction thereof have been discussed in No. 18,130, Armco Steel Corporation v. State of North Dakota, 376 F.2d 206, decided concurrently herewith, and will not be made the subject of general repetition in this opinion. The only question necessary to be considered here is Armco's contention that the evidence was insufficient to show that the Counties had been damaged by the conspiracy.

■ The judgment of conviction against Armco was, as held in the *State of North Dakota* case, supra, prima facie evidence of the existence of the conspiracy and of its application to corrugated culverts generally in the State during the conspiracy period. Beyond this, there was specific proof as to the general uniformity of the bids submitted by the conspirators to a County for supplying it with corrugated culverts and

William R. Pearce, of Pearce, Engebretson, Murray & Anderson, Bismarck, N. D., for appellant and filed printed brief.

David L. Milhollan, Bismarck, N. D., for appellees Adams County, and others and filed brief with Albert A. Wolf, Bismarck, N. D.

Before JOHNSEN, Senior Circuit Judge, BLACKMUN, Circuit Judge, and YOUNG, District Judge.

---

I. See Footnote 1 in Armco Steel Corporation v. State of North Dakota, 8 Cir., 376 F.2d 206.

of the conformity of these bids with the list price which Armco had set. And as in the *State of North Dakota* case, supra, there was sufficient probative basis for the jury to find that this conformity was not mere individual price parallelism, but came about from the suppliers' common use of Armco's list price, in understanding and accord among them, to avoid having the general price levels disrupted, as Armco had threatened to do if any of them engaged in departure from the list price.

The method used by the Counties in purchasing corrugated culverts was for each County to call for "bids" or submission by suppliers at the beginning of a calendar year of the prices at which they would provide it with whatever quantities of such culverts, in their varying sizes, it might desire to purchase during the course of that year, and for the County to accept the lowest "bid". Where there were identical "bids", as would be the situation in the conspirators' use of the fixed list prices, the County accepted all of these bids.

Sometimes the list price used by the conspirators for an individual County would differ from that used in general as to the others. Also, there could be sporadic incidents of one of the conspirators offering to give an individual County a discount from the general list prices submitted by him. But these instances of deviation were apparently not such as to disturb the course of the conspiracy, for, as one witness is shown by appellees' supplemental record to have testified, "the infrequent discounting that might have taken place was not a problem at these meetings"—although it had been Armco's threat to undercut and disrupt the general price levels if there was not adherence by the three other suppliers to its list prices which had initially cemented the conspiracy.

■ The evidence of damages as to each County consisted in showing the bid prices which it had had to pay for culverts during the conspiracy years as compared with the bid prices paid by it during the three-year period preceding and the three-year period following the existence of the conspiracy. The percentage of the difference which existed in these prices as to each County was brought out—it varied among the Counties from 17.3 to 20.3 percent. If some particular County or Counties had received a substantial discount from the general list prices of the conspirators for any year, that year was eliminated as a basis of computation and request for damages.

An economics expert, who had made a study and analysis of the cost factors involved in the production of culverts and of the market forces, both national and local, which could affect the prices thereof during the periods compared, testified that there was nothing in these aspects which was able to account for the difference in the list prices of the conspiracy over the average of the prices for the periods preceding and following. And as to the drop of more than 20% which occurred in the prices bid to the Counties after the exposure of the conspiracy, he stated that he could not find anything "in terms of cost factors and in terms of market conditions" to account for the drop, and that the only basis on which it was possible for him to make explanation of the reduction was the admitted termination of the conspiracy. There was nothing which destroyed the substantiality of this proof in the situation, and as in Armco Steel Corporation v. State of North Dakota, supra, we have no difficulty in holding that it provided adequate basis for the amounts of the verdicts which the jury returned.

■ The sum of $150 will be allowed appellees jointly in partial payment of the supplemental record filed by them, taxable as costs against appellant. The sum of $1,000 will further be allowed appellees jointly as attorney's fee here, similarly taxable against appellant as costs. This allowance has taken into account the overlapping of the case with Armco Steel Corp. v. State of North Dakota, supra, and with No. 18,187, Armco Steel Corporation v. Burleigh County, 8

Cir., 376 F.2d 215, decided concurrently herewith, in the legal services involved; the fact of the employment by the parties of the same counsel in the three cases; the size (11 pages) of the brief filed and its indenticalness with that in No. 18,187; the total of the attorney's fee allowances ($8,750) made by the District Court in the case; and the circumstance that only a single appearance of counsel as to all of the cases has been necessary here.

Affirmed.