CONTINENTAL ILLINOIS NATIONAL BANK & TRUST COMPANY OF CHICAGO, as Trustee for the Finney County, Kansas Single Family Mortgage Revenue Bond Program, 1982 Series A, Plaintiff,

v.

John E. CATON, Kirchner Moore and Company, a Colorado corporation, and United Securities, Inc., a Kansas corporation, Defendants.

No. 88–1611–C.

United States District Court, D. Kansas.

May 22, 1991.

W. Gordon Dobie, Dan K. Webb and Stephen C. Schulte of Winston & Strawn, Chicago, Ill., and Ken M. Peterson of Morris, Laing, Evans, Brock and Kennedy, Wichita, Kan., for plaintiff.

William R. Smith of Hershberger, Patterson, Jones & Roth, Wichita, Kan., for defendant Caton.

James C. Ruh and John V. McDermott of Jensen, Byrne, Parsons, Ruh & Tilton, P.C., Denver, Colo., and John T. Conlee and David G. Seely of Fleeson, Gooing, Coulson & Kitch, Wichita, Kan., for Kirchner Moore and Co.

## MEMORANDUM AND ORDER

JOHN B. WOOLEY, United States Magistrate Judge.

On this 22nd day of May 1991, for decision by the court, is "Defendant Caton's Motion to Compel" (Dkt. # 299) and Memorandum in Support thereof (Dkt. # 300), both filed November 21, 1990. On December 10, 1990, plaintiff filed its Response thereto (Dkt. # 304) and on January 4, 1991, Caton filed a Reply (Dkt. # 309).

Plaintiff is represented by W. Gordon Dobie, Dan K. Webb and Stephen C. Schulte of Winston & Strawn, Chicago, Illinois and Ken M. Peterson of Morris, Laing, Evans, Brock and Kennedy, Wichita, Kansas. Defendant Caton is represented by William R. Smith of Hershberger, Patterson, Jones & Roth, Wichita, Kansas. Kirchner Moore and Company is represented by James C. Ruh and John V. McDermott

of Jensen, Byrne, Parsons, Ruh & Tilton, P.C., Denver, Colorado and John T. Conlee and David G. Seely of Fleeson, Gooing, Coulson & Kitch, Wichita, Kansas.

On August 9, 1990, defendant Caton submitted eighteen interrogatories to plaintiff. On October 9, 1990, the court entered an Order (Page 3, Dkt. # 294, filed October 11, 1990) directing plaintiff to answer the outstanding Interrogatories submitted by Caton. That order was based on the agreement of counsel, expressed in a telephone conversation October 9, 1990, that plaintiff would promptly answer the Interrogatories. On November 9, 1990 (and before the Third Amended Complaint was filed March 6, 1991), plaintiff submitted its responses and, although substantive answers were supplied to some, plaintiff objected to all of the eighteen (18) Interrogatories except numbers 1 and 13. Number 1 is sufficiently answered. Plaintiff's responses to 11 of the 18 questions are, for all practical purposes, the same. (See responses to Interrogatories numbered 2, 3, 4, 5, 6, 7, 8, 9, 11, 12 and 18.) Plaintiff's response to number 10 is insufficient because it is premised on a false conclusion. Plaintiff's response to number 13 is simply not responsive. Interrogatories 14–17, inclusive, are sufficiently answered. In the instant motion, Caton seeks to require the plaintiff to provide complete answers to the interrogatories.

Caton contends that plaintiff's objections are without merit, that the answers given are incomplete and evasive; that Interrogatories 2 through 12 requested plaintiff to state specific facts supporting its various contentions and allegations in the complaint; that the incomplete and evasive manner in which plaintiff has responded is not a proper answer, and he refers the court, by way of example, to Interrogatory number 2 and the response thereto which requests the plaintiff to state facts supporting its various contentions and allegations in the complaint that Caton engaged in acts of racketeering, and plaintiff's response thereto which, in addition to the objection that the interrogatory is overly broad, burdensome and oppressive, contained only references to Rule 33(c), the

depositions of Caton, Queen, Norton and Garden National Bank personnel, the Kirchner Moore employees and Continental Bank personnel, and the Third Amended Complaint.

Caton also refers to Interrogatory No. 13 in which he requested plaintiff to itemize its damages. In response, plaintiff failed to state any dollar amount and simply discussed the categories of damages sought. Caton states that after two and one-half years of litigation, he still does not know the amount of damages for which he is being sued, and argues that Rule 33, F.R. Cv.P. requires good faith answers be provided.

In addition, Caton requests, pursuant to F.R.Cv.P. 37(a)(4), that he be allowed expenses and attorney's fees for having to file the instant motion and brief in support.

Plaintiff counters (1) that its answers comply with the Federal Rules of Civil Procedure; (2) that, pursuant to the law of this Circuit, Caton has the burden of demonstrating that each interrogatory answer is incomplete and that plaintiff may more easily derive or ascertain the answer from identified documents than defendant; and (3) Caton's request is burdensome, vexatious, unreasonably duplicative of other discovery, and would require plaintiff to do Caton's trial preparation work and would necessitate that plaintiff review thirty depositions and all documents produced in this case.

Plaintiff argues that Caton fails to state *which* answers to the interrogatories are insufficient, and *how* each of the answers is insufficient.

Plaintiff also asserts that Interrogatory number 10 misstates paragraph 87 of the Amended Complaint and consequently it cannot be answered.

In *Hickman v. Taylor*, 329 U.S. 495, 500, 67 S.Ct. 385, 388, 91 L.Ed. 451 (1947), the United States Supreme Court stated:

> The new rules ... restrict the pleadings to the task of general notice-giving and invest the deposition-discovery process with a vital role in the preparation for trial. The various instruments of discovery now serve (1) as a device, along with the pre-trial hearing under Rule 16, to narrow and clarify the basic issues between the parties, and (2) as a device for ascertaining the facts, or information as to the existence of whereabouts of facts, relative to those issues. Thus civil trial in the federal courts no longer need be carried on in the dark. The way is now clear, consistent with recognized privileges, for the parties to obtain the fullest possible knowledge of the issues and facts before trial.

■ An interrogatory may properly inquire into a party's contentions in the case and the factual basis therefor. *Bohannon v. Honda Motor Company, Ltd.*, 127 F.R.D. 536 (D.Kan.1989), citing *Hercules, Inc. v. Exxon Corp.*, 434 F.Supp. 136, 157 (D.Del.1977).

The defendant is entitled to know the factual basis of plaintiff's allegations and the documents which the plaintiff intends to use to support those allegations. *Kar Products, Inc. v. Avnet, Inc.*, 78 F.R.D. 204 (N.D.Ga.1978); *Chubb Integrated Systems Limited v. National Bank of Washington*, 103 F.R.D. 52 (D.D.C.1984).

The proper way to answer an interrogatory is found in *Miller v. Doctor's General Hospital*, 76 F.R.D. 136, 140 (W.D.Okla. 1977).

> ... The answers to interrogatories must be responsive, full, complete and unevasive. The answering party cannot limit his answers to matters within his own knowledge and ignore information immediately available to him or under his control.... If an appropriate interrogatory is propounded, the answering party will be required to give the information available to him, if any, through his attorney, investigators employed by him or on his behalf or other agents or representative whether personally known to the answering party or note ... If the answering party lacks necessary information to make a full, fair and specific answer to an interrogatory, it should so state under oath and should set forth in detail the efforts made to obtain the information.

(citations omitted).

■ All discovery requests are a burden on the party who must respond there-

to. Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden. *Jackson Jordan, Inc. v. Kyle Railways, Inc.*, No. 87–1059 (D.Kan. March 22, 1988). Where the requested material is relevant and necessary to the discovery of evidence, a protective order should not be entered merely because compliance with a request for production would be costly or time consuming. *Kozloyski v. Sears, Roebuck & Co.*, 73 F.R.D. 73, 76 (D.Mass.1976). Bare assertions that the discovery requested is overly broad, burdensome, oppressive or irrelevant are ordinarily insufficient, standing alone, to bar production. *Josephs v. Harris Corp.*, 677 F.2d 985, 998 (3d Cir.1982); *Martin v. Easton Publishing Co.*, 85 F.R.D. 312, 316 (E.D.Pa.1980). It is therefore plaintiff's burden in the instant situation to clarify and explain how each discovery request is irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, or burdensome. *See In re Folding Carton Antitrust Litigation*, 83 F.R.D. 251, 254 (N.D.Ill.1978); *Wirtz v. Capitol Air Service, Inc.*, 42 F.R.D. 641, 643 (D.Kan.1967).

In order to demonstrate the nature of plaintiff's responses the court has selected Interrogatory Number 3, as a typical example of the type of response plaintiff made to 11 of the Interrogatories i.e. 2 through 9, inclusive, 11, 12 and 18.

*Interrogatory No. 3:* Concerning your contention that John Caton was employed by or associated with an enterprise, state in full detail and with particularity all facts that support your contention, including but not limited to:

(a) The identity of the enterprise;

(b) When John Caton allegedly became employed by or associated with such enterprise;

(c) Each and every member of such enterprise;

(d) The date on which each member became employed by or associated with such enterprise; and

(e) The identity of each and every document that supports your contention.

*Answer:* Trustee objects to Interrogatory No. 3 as burdensome, oppressive, and overly broad. The Trustee further objects to this interrogatory as calling for a legal conclusion. Without waiver of any objection, Trustee refers Defendant pursuant to Federal Rule of Civil Procedure 33(c) to the deposition transcript and documents of John E. Caton, the depositions of David Queen, Joe Norton, and Garden National Bank personnel, the documents and deposition transcripts from Kirchner Moore & Company employees and Continental Bank personnel, and the depositions and documents from Defendant United Securities. Trustee further refers Defendant to its Third Amended Complaint which pleads with particularity the fact that John Caton was employed by or associated with an enterprise.

The portion of the response above that appears in bold type, is identical to the language in the Answers to Interrogatories numbered 2, 4, 5, 6, 8, 9 and 11, and almost the same as the responses to 7, 12 and 18.

Plaintiff's Answers to interrogatories numbered 8 and 9 repeat the same language illustrated and add further verbage.

The answer to interrogatory number 7 uses the same language, but references "Trustee's Answer and Supplement to Caton Interrogatory number 9 dated January 17, 1989." Similarly, in response to Interrogatory number 12, which requests:

State in full detail and with particularity all facts which would tend to prove an intent to defraud on the part of John Caton.

Plaintiff's answer:

Continental objects to Interrogatory No. 12 as vague and ambiguous in that it does not reference any allegation in the Complaint, or state whether Caton is even referring to the matters at issue herein. Without waiver of any objection, Trustee refers Defendant pursuant to Federal Rule of Civil Procedure 33(c) to the deposition transcript and documents of John E. Caton, the depositions of

David Queen, Joe Norton, and Garden National Bank personnel, the documents and depositions transcripts from Kirchner Moore & Company employees and Continental Bank personnel, and the depositions and documents from Defendant United Securities. See Third Amended Complaint.

Similarly, the answer to Interrogatory No. 18 refers to exhibits and the deposition of a Richard LaVarnway.

■ Generally, plaintiff's answers refer Caton to deposition testimony of certain individuals and references to its Amended Complaint. (The court assumes all plaintiff's references are to the First Amended Complaint (Dkt. #195), since the Third Amended Complaint was not filed until March 6, 1991 and the proposed Second Amended Complaint (see Dkt. #240) was never filed, the motion to do so having become pointless after the District Court ruled (on August 6, 1990—Dkt. #235) on the Motions to Dismiss filed by plaintiff, DBLKM and GNB.) This is not a proper answer to an interrogatory. Incorporation by reference to a deposition is not a responsive answer. *Hoffman v. United Telecommunications, Inc.*, 117 F.R.D. 436 (D.Kan. 1987) citing *Martin v. Easton Publishing Co.*, 85 F.R.D. 312 (E.D.Pa.1980).

■ Plaintiff consistently cites in its answers F.R.Cv.P. 33(c) in an attempt to justify its non-specific references to other documents. Rule 33(c) states as follows:

Where the answer to an interrogatory may be derived or ascertained from the *business records* of the party upon whom the interrogatory has been served or from an examination, audit or inspection of such *business records,* including a *compilation, abstract* or *summary thereof* the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served, it is a sufficient answer to such interrogatory to specify the records from which the answer may be derived or ascertained and to afford to the party serving the

interrogatory reasonable opportunity to examine, audit or inspect such records and to make copies, compilations, abstracts or summaries. A specification shall be in sufficient detail to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained.

The Advisory Committee Notes to the 1980 Amendment of F.R.Cv.P. 33(c) states:

The Committee is advised that parties upon whom interrogatories are served have occasionally responded by directing the interrogating party to a mass of business records or by offering to make all of the records available, justifying the response by the option provided by this subdivision. Such practices are an abuse of the option. A party who is permitted by the terms of this subdivision to offer records for inspection in lieu of answering an interrogatory should offer them in a manner that permits the same direct and economical access that is available to the party. If the information sought exists in the form of compilations, abstracts or summaries then available to the responding party, those should be made available to the interrogating party. The final sentence is added to make it clear that a responding party has the duty to specify, by category and location, the records from which answers to interrogatories can be derived.

(underlying added)

Plaintiff relies upon *Daiflon, Inc. v. Allied Chemical Corp.*, 534 F.2d 221 (10th Cir.1976) *cert denied* 429 U.S. 886, 97 S.Ct. 239, 50 L.Ed.2d 168 (1976), to justify its responses because, in *Daiflon* the court held that F.R.Cv.P. 33(c) gave the party served with an interrogatory, the option of producing business records from which the answer could be obtained instead of preparing a direct answer, when "the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served." [1] However, unlike the instant

**1.** It should be noted, in passing, that this case was decided in 1976, *prior* to the 1980 Advisory

case, in *Daiflon,* the responding party *specifically* identified documents which would provide the information.

In contrast to the *Daiflon* case, plaintiff has failed to identify, with specificity, where the information can be obtained. Plaintiff merely *refers* Caton to various depositions, records and documents.

Rule 33(c) is not intended to be utilized in a situation like the present one. It applies to "business records" from which raw data and facts can be discovered. The rule does not mention deposition transcripts, documents or writings that were generated, or discovered, respectively, *during the course of prior discovery in the same case,* only *portions* of which may be *relevant* to the issues for trial. *Daiflon* is easily distinguished on this basis. There, the answer to the interrogatory in dispute referred to the books and business records of Daiflon which, it appears from the opinion, were kept in the *ordinary course* of the operation of Daiflon's *business before* the lawsuit was filed. (See pages 222, 223 and 224.)

■ Interrogatory no. 13 requests the plaintiff, very specifically, to state the precise amount of damages plaintiff has sustained as a consequence of the acts alleged in the Amended Complaint. Plaintiff does not respond with any specific damage amounts, but states:

> As the Trustee has maintained throughout this litigation, it seeks: (1) The shortfall existing in the Trust Estate of the Finney County Single Family Mortgage Revenue Bonds 1982 Series A that is the natural and probable consequence of the alleged acts and omissions of the Defendants named herein, together with accrued interest thereon, and all resulting fees, expenses, and costs. (2) Punitive damages. Pursuant to Rule 33(c), Trustee further refers Defendant to the Annual Accountant's Report for the Finney County program, the attorneys fees information which have been produced, and Continental's expert report which

will be produced at the time agreed to by the parties pursuant to stipulation.

Again, Caton is entitled to a specific and substantive answer, i.e. the dollar amount of plaintiff's claimed damages and a definitive description of other non-pecuniary relief, if any, plaintiff seeks. Plaintiff has responded by merely categorizing the damages sought, and referenced various financial documents from which, presumably, the information may be derived. However, again no specific references are made to page numbers, etc., or specific sections or paragraphs. The court has no information about how these reports and documents were prepared, how detailed, how long, and what information is contained therein. Therefore, the court does not know if the information requested may, or may not, be readily gleaned from such documents by Caton. The court relies therefore, upon Caton's statement in Dkt. # 300 at page 4–5, that Caton "does not know the amount of damages for which he is being sued." The court takes this statement to mean that Caton cannot extract that information from the financial records provided. The court therefore finds, that the answer to Interrogatory number 13 is not sufficient.

Interrogatories numbered 14, 15, 16 and 17 are directed at ascertaining if Continental Bank approved or accepted, or failed to approve or accept Action Mortgage Programs or Loans in any other mortgage bond program. Plaintiff, in its response, objects to these interrogatories as being overly broad, but, without waiver of objection, denies that it ever approved or rejected Action Mortgage Programs, or Loans. These answers are sufficient.

■ Interrogatory number 10 requests: State in full detail and with particularity all facts that support the contention implied in paragraph 87 of the Amended Complaint that: "[John Caton] had knowledge that the Action Mortgage Program was an attempt to circumvent the rights of the Trustee and Bondholders under the Trust Indenture and Agreement."

Committee Note, quoted in the text.

*Answer:* Trustee objects to Interrogatory No. 10 as misstating paragraph 87 of the Amended Complaint and consequently said Interrogatory cannot be answered.

Paragraph 87 of the First Amended Complaint reads:

The Defendants never informed the Trustee of the attempt to circumvent the rights of the Trustee and bondholders under the Trust Indenture and Agreement. The aforesaid acts of the Defendants constituted interference with the contractual rights of the Trustee and the bondholders.

Plaintiff takes refuge in mere technicality. Interrogatory No. 10 does, in fact, misquote paragraph 87 of the (First) Amended Complaint (Dkt. # 195). However, paragraphs 86 and 87 together, plainly allege and imply that the gist and meaning of the Interrogatory is correct. Had Caton included paragraph 86 in the question there could be no doubt as to its meaning and import. Although plaintiff may have been momentarily misled there can be no question plaintiff's attorneys knew, on a moment's reflection, that Caton had simply failed to include paragraph 86 in the question, or quoted (or paraphrased) from paragraphs 86 and 87.

The Interrogatory plainly asks for the facts supporting plaintiff's allegation that John Caton had knowledge that the Action Mortgage Program was an attempt to circumvent the rights of the Trustee and bondholders. John Caton is a defendant in this action. The use of the word "Defendants" in paragraphs 86 and 87 includes defendant Caton. The court finds that the answer given by plaintiff to Interrogatory No. 10 is not sufficient.

It is difficult to understand why the responses to the Interrogatories failed to comply with the applicable rules and case law. Judging from the nature of the Responses, it appears counsel forgot that *discovery* has to do with the discovery of *facts* and *evidence*, not *allegations*. While it is true that the *allegations* in the Complaint(s) do shed some light on the role Caton (apparently) played, all references in plaintiff's Interrogatory Responses to the *allegations* in the Complaint amount to nothing more than *claims* or *allegations* that the *allegations* are true. Such responses are simply not appropriate and the court must disregard those portions of plaintiff's various Responses.

Counsel have not furnished to the court the transcripts of the depositions of Queen, Norton, Garden National Bank employees and others (which are referred to in plaintiff's Responses to Interrogatories 2 through 9, 11 and 12, or the deposition of LaVarnway referred to in its Response to Interrogatory 18). It may be that some portion (perhaps all) of the testimony of those persons plaintiff refers to is admissible evidence, or ultimate facts, as to Caton's involvement, however plaintiff's counsel have failed to specify by page (and line, if necessary to provide a full, complete answer) the testimony upon which it relies. Given the fact that some of such testimony may not be admissible evidence or ultimate facts, plaintiff's citation to them, again, amounts to little more, for present purposes, than mere allegations or claims, not the evidence or facts to which the questioner is entitled.

Likewise, those parts of the responses referring to Rule 33(c) are insufficient, lacking, fail to comply with that rule and add nothing to the Response.

Rule 11, F.R.Cv.P., provides: (in pertinent part)

The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument, etc.

■ Nowhere is the requirement of Rule 11 more important than with regard to the allegations of the basic pleadings, i.e. the complaint, the answer, and, if filed, the reply. If a defendant, either as to the complaint, a counterclaim, a cross-claim or a third party claim, is not plainly and specifically (and he rarely is under notice

pleading) informed by the allegations in the pleadings lodged against him, he must be allowed to require the accusing party to set forth, with particularity, what he is accused of doing, not doing, or both. That is one of the purposes of discovery. The rule applies with equal force with regard to requiring a defendant to allege his defenses based on previous "reasonable inquiry" and limit them to those that have a reasonable basis in fact. Thus interrogatories, or other discovery thrusts, directed at complaints, answers, replies or other basic pleadings (not to exclude "motions or other paper[s]") to discover the detail factual basis for a particular allegation or alleged cause of action, or to test whether there is any factual basis at all for a particular allegation or alleged cause of action, are entirely proper and appropriate. The court encourages such discovery. Hopefully, the result of such discovery will impel parties and their counsel toward pleadings, motions and other papers that are "well grounded in fact and ... warranted by existing law", etc., as required by Rule 11.

Either by plaintiff's failure, or that of its counsel, to make "reasonable inquiry" before filing its various Complaints, or failing to confine its allegations to the facts disclosed by what its "reasonable inquiry" revealed, or by failing to amend by deleting allegations not well grounded in fact as learned through discovery, or otherwise, after the complaint is filed, or by negligently or intentionally deciding it would not fully and completely answer Caton's Interrogatories, plaintiff, or its counsel, have necessitated the filing of the instant motion, the brief in support, plaintiff's response thereto and Caton's reply, plus the time and effort of the court in reading the same, researching the law and writing this opinion. In addition, there will, no doubt, be other pleadings to follow this order in the form of motions to review and briefs in support and in opposition thereto and an order of the district court. All could have, and should have, been avoided by adherence to the rules, particularly to Rule 11 and/or a good faith effort to comply with

the letter and spirit of Rule 33 and the other applicable Rules of Civil Procedure.[2]

Plaintiff has requested leave to file four Complaints in this case. It has been allowed to file three of those (the original, the (First) Amended and the Third Amended). Although never filed, for reasons previously stated, the Motion to File a Second Amended Complaint (Dkt. # 240, filed August 6, 1990) stated in general terms how plaintiff desired to amend his previous Complaint and, among other things, stated plaintiff wanted to "assert new theories of recovery/causes of action", thus served to put defendants on notice of possibly having to defend against new and different allegations and claims. The court realizes that, with notice pleading, all parties, through discovery, learn new facts and information which may, and frequently does, legitimately result in dropping or adding a cause of action or defense entirely or altering it in some respect. Nevertheless, the result of the three Complaints filed has put defendants in the position of frequently re-aligning their sights and adjusting their defenses to meet the changed position of the plaintiff.

The court assumes plaintiff's Third Amended Complaint, after all the discovery that has been completed in this case, and the rulings and directions of this and the district court in response to the various motions decided, represents plaintiff's ultimate and final position to which only minor adjustments, if any, will be necessary. The point is that the court can well understand, at this stage of the case, why Caton would want to try to pin plaintiff down to specifics, so he can learn what he must defend against in court. The court believes each defendant is entitled to that information before trial and that it is not unduly burdensome, oppressive or inappropriate to require plaintiff to finally be brought to quarter and state its position, as to each count, with specific particularity, and disclose the evidence upon which it is going to rely at trial rather than referring to a mass of deposition transcripts, records and documents from which a defendant is sup-

---

2. See Rules 1, 11 and 26 and the Advisory Com- mittee Notes thereto.

posed to winnow and glean, if he can, the relevant from the non-relevant, the wheat from the chaff, the jewels from the junk, as it were.

Plaintiff's argument that defendant can discern, from the general mass, exactly what plaintiff claims defendant did or did not do, or both, as well as plaintiff can, is almost absurd. Only plaintiff and its lawyers know what evidence, as opposed to all the information it has discovered, it intends to offer at trial and the relationship of that evidence to its theories of recovery and claims against Caton.

In this connection, on the first page of its Responses to defendant Caton's Interrogatories of August 9, 1990, plaintiff states its "General Objections" wherein it objects to all the Interrogatories "to the extent that they seek information subject to the attorney-client privilege, the work product doctrine and any other applicable privilege or doctrine."

No specific objection, on any basis suggested above, is made as to any particular Interrogatory and the court concludes that the attorney-client privilege is simply not applicable to the information sought by any of the questions in issue. Conceivably, the answers to some of the questions could require plaintiff to disclose attorney opinion work product. For example, Interrogatories numbered 2, 3, 4, 6 and 13 appear to be intended, by containing a request that plaintiff "identify each and every document" that supports the answer, to furnish Caton a description so, no doubt, he can later specifically request their production. The decision of counsel, as to which of many documents or records it intends to use at trial may be protected. On the other hand, if those documents and records are to be used by plaintiff as trial exhibits, they must be, in accordance with the Scheduling Order, disclosed in the final exhibit list, a copy of which must be furnished to opposing counsel before trial. Accordingly, plaintiff is not, by this order, required to describe any document or record which will not be described in its final exhibit list as required by the Scheduling Order, or to explain, in response to the Interrogatories, how or why the documents it describes, are relevant or otherwise connected with any particular interrogatory answer it may make.

Accordingly, the court finds that Caton's Motion to Compel should be granted as to all those Responses to Interrogatories herein found insufficient, i.e. 2 through 13, inclusive, and 18.

 Caton has requested sanctions pursuant to F.R.Cv.P. 37(a)(4) in the form of attorneys' fees for the time and the expenses incurred in preparing and filing the instant motion. In *Cine Forty–Second Street Theatre Corp. v. Allied Artists,* 602 F.2d 1062, 1066 (2d Cir.1979), the court stated that the sanctions provided in Rule 37 served a threefold purpose:

(1) The most extreme preclusionary order ensures that a party will not profit from its failure to comply;

(2) Rule 37 sanctions are specific deterrents framed to secure compliance with a particular order; and

(3) Courts are free to consider the deterrent effect on the case before them and on other litigation.

On October 9, 1990 (Dkt. # 294), the court ordered plaintiff to answer Caton's Interrogatories. Thirty days later, plaintiff filed the instant responses which are insufficient.

This litigation has had a long history of discovery disputes. The court has expended an extra-ordinary amount of time, and effort in reading briefs, researching and writing orders in this case. There has been a constant barrage of motions filed and as a consequence, this litigation has at times almost monopolized the court's time and limited resources in order to attempt to keep discovery moving on schedule. To illustrate, the court refers the reader to the court's Order of September 20, 1990 (Dkt. # 286, at page 4), wherein the court stated:

To give the reader some idea of the activity in this case, in the twenty-nine working days since August 6 (when the District Court ruled on pending dispositive motions) through September 18, 1990 (twenty-nine working days) thirty-nine (39) separate pleadings (enough to file [sic] an entire court file jacket) including nine (9) motions and fifteen (15) pleadings either in support of or in response

and/or opposition to those motions have been filed.

Counsel in this case are experienced attorneys and therefore should be well aware that their responses were lacking. The court believes it would not be inappropriate to impose sanctions, however, because the minds of reasonable men and women might differ as to the correct interpretation of Rule 33(c) and because the imposition of sanctions (in every case) diverts the efforts of court and counsel away from the mainstream of the case, it appears sufficient in this instance to simply remind plaintiff's counsel of the requirement and need for good faith compliance with the spirit as well as the letter of the law and rules.

IT IS THEREFORE ORDERED that Defendant Caton's Motion to Compel be, and it hereby is, sustained as to Interrogatories numbered 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13 and 18, and denied as to Interrogatories numbered 1, 14, 15, 16, and 17.

IT IS FURTHER ORDERED, that plaintiff shall fully and completely answer Interrogatories numbered 2 through 13, and 18 on or before June 10, 1991.

IT IS FURTHER ORDERED that Caton's motion for sanctions pursuant to Rule 37(a)(4) be, and it hereby is, denied.

IT IS, BY THE COURT, SO ORDERED.